**PERE MARQUETTE RY. CO. v. BASSETT, Deputy Com'r, et al.**

**Civil Action No. 189.**

District Court, W. D. Michigan, S. D.

Sept. 30, 1941.

John C. Shields and William R. Althans, both of Detroit, Mich. (Paul O. Strawhecker, of Grand Rapids, Mich., of counsel), for plaintiff.

Joseph F. Deeb, U. S. Atty., of Grand Rapids, Mich., for defendant Harry W. Bassett, Deputy Com'r for Tenth Compensation District of the United States Employees' Compensation Commission.

Wilfred Hocking, of Ludington, Mich., in pro. per. and for defendant Eric A. Johnson.

RAYMOND, District Judge.

### Findings of Fact.

1. On March 17, 1940, Eric A. Johnson was in the employ of plaintiff as an able-bodied seaman and watchman.

2. On said date, said Eric A. Johnson was injured while on board plaintiff's car ferry No. 21, on Lake Michigan. The car ferry was operated between the ports of Manitowoc, Wisconsin, and Ludington, Michigan, and within the jurisdiction of this court.

3. Claimant was injured in the course of his employment as the vessel was entering the port of Ludington, when a heavy freight car jack fell on his left leg, breaking it in several places below the knee, as he was "taking down the gear".

4. Pere Marquette car ferry No. 21 was used by plaintiff to transport freight cars

across Lake Michigan. It was generally loaded with freight cars and automobiles. Passengers were carried a considerable portion of the time during the year. The vessel carried no bulk freight.

5. The gear which claimant was taking down at the time of the accident consisted of heavy screw jacks, turnbuckles and clamps used to hold the freight cars in place during the voyage across Lake Michigan. The screw jacks are put up against the freight cars to keep them from rolling over, and turnbuckles are used to draw the freight cars down to the car deck so they will not roll off the car deck if the vessel rolls in the rough weather frequently encountered on Lake Michigan.

6. It was part of claimant's duties as a watchman and able-bodied seaman to put up the gear on the freight cars, after leaving port, so that the freight cars would not tip over or run off the boat in rough weather; watch them en route to see that they remained fast; and to take down the gear on entering the port of destination.

7. It is common knowledge that at certain seasons of the year very severe and sudden storms harrass Lake Michigan and imperil shipping thereon.

8. The watching and proper handling of the cargo of freight cars while the vessel was en route across Lake Michigan were for the purpose of preventing peril to the vessel, her passengers and her crew and cargo, and related directly to the navigation of the vessel and to the purpose of commercial navigation which is to bring vessel, passengers, crew and cargo safely into port.

9. Claimant in his duty of handling the gear and in watching it and the freight cars while the vessel was en route across Lake Michigan between ports, was naturally and primarily on board the vessel to aid in her navigation, and was a member of the crew.

10. Claimant's work in putting up and taking down the gear was performed after the vessel left the shore. Claimant was not in the position of a longshoreman, a harbor worker or other casual worker on the water. Pere Marquette car ferry No. 21 was not a harbor craft, but a vessel regularly plying between ports across Lake Michigan.

11. In addition to the above mentioned duties, and while the vessel was en route across Lake Michigan, claimant took soundings of the holds of the vessel and did fire patrol duty when passengers were carried. He held a life boat ticket, as a life boatman, was assigned to a life boat post and participated in life boat drill which was held every week. When the vessel was on Lake Michigan, claimant took soundings of the holds every two hours and reported the soundings to the engine room and pilot house. When a heavy load was carried, soundings were taken every hour. These soundings were taken in order that the vessel might be kept on level keel and were to aid in her navigation.

12. As an able-bodied seaman, claimant was at all times subject to the lawful orders of the master or other officers in command of the vessel. He had been an able-bodied seaman since 1926 and carried a book as such, and in order to change from one vessel to another, it was necessary to have the book signed off the vessel he had been working on. This book is called a "continuous discharge book".

13. It was necessary for claimant to be an able-bodied seaman in order to be a watchman for plaintiff on its car ferries.

14. The inspection certificate for Pere Marquette car ferry No. 21, issued by the U. S. Steamer Inspection Service, designated sixteen as the number of the crew of which number eight able-bodied seamen were required. Claimant was one of the eight able-bodied seamen at the time of the accident, and was also one of the life boatmen required by the certificate.

15. Claimant filed claim for compensation with United States Employees' Compensation Commission and said claim for compensation came on to be heard on the answer of the employer, to-wit, the plaintiff, before defendant Harry W. Bassett, deputy commissioner, and on August 8, 1941, said deputy commissioner Harry W. Bassett entered a compensation order and award of compensation to said Eric A. Johnson in the sum of $760.

16. Plaintiff herein filed its bill of complaint under Section 921 of 33 U.S.C.A., and seeks to have the compensation order set aside on the ground that the claimant was a member of the crew of Pere Marquette car ferry No. 21.

17. There is no evidence to support the finding of fact of the deputy commissioner that claimant was not a member of the crew of said vessel, Pere Marquette car ferry No. 21, at the time of the accident.

### Conclusions of Law.

1. This court has jurisdiction of the subject matter and of the parties.

2. Claimant comes within the exception of section 3(a) (1) of the Longshoremen's and Harbor Workers' Compensation Act in that he was a member of the crew of said vessel at the time of the accident. 33 U.S.C.A. § 903(a) (1).

3. No compensation is payable to defendant Eric A. Johnson under the Longshoremen's and Harbor Workers' Compensation Act.

4. Defendant Harry W. Bassett as said deputy commissioner was without jurisdiction to make the compensation order and award of compensation, dated August 8, 1941, and said order and award are null and void.

### Opinion.

The facts sufficiently appear from the accompanying findings. The complaint seeks to have the court set aside the compensation order entered by the deputy commissioner, it being plaintiff's contention that Johnson was a member of the crew, and that liability for his injuries must be tested by the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The sole issue before the court (jurisdiction having been conceded at the hearing) is whether the finding of the deputy commissioner that claimant Eric A. Johnson was not a member of the crew of the Pere Marquette car ferry No. 2 at the time of the accident is supported by evidence.

The controlling question is, what were the actual duties of claimant? See South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Maryland Casualty Co. v. Lawson, 5 Cir., 94 F.2d 190. Upon this issue there is no substantial conflict of testimony. It is the view of the court that the duties which rested upon claimant, as they appear in the findings, were absolutely indispensable to the safety of the vessel, the crew, the cargo and the passengers, and that the performance of these duties was essential to the successful functioning of the principal enterprise of the vessel. The primary duty of the claimant was to keep the free cars attached to the rails upon the vessel and to keep them from rolling. Without the accomplishment of this purpose, the vessel could not be safely operated. Claimant's duties in watching and handling the cargo while en route, the taking of soundings in the holds at regular intervals, and participation in fire patrol and life boat drill were primarily in aid of navigation of the vessel. It is the view of the court that there is no evidence to support the finding of fact of the deputy commissioner that claimant was not a member of the crew.

An order will accordingly be entered setting aside the compensation order of the deputy commissioner and the award made therein, and an injunction will issue perpetually enjoining defendants Harry W. Bassett and Eric A. Johnson and Wilfred Hocking from taking proceedings to enforce said compensation order.